D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
KAREN OLENICK,

                Plaintiff,

    - against -

MICHAEL J. ASTRUE,
Commissioner,
Social Security Administration,

                Defendant.
----------------------------------------------------X

**ORDER**
08-CV-4746 (SJF)

FEUERSTEIN, J.

Plaintiff Karen Olenick ("plaintiff" or "Olenick") has commenced this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of defendant Commissioner of the Social Security Administration's (the "Commissioner") denial of her application for disability insurance benefits. Both parties move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. [Docket Entry Nos. 21, 23]. For the reasons set forth herein, plaintiff's motion is granted in part, and this case is remanded for further proceedings consistent with this order.

I.     Background

    A.     Plaintiff's Background and Medical History.

Plaintiff was born in 1962. Plaintiff's Memorandum in Support of Cross-Motion ("Pl.

1

Br.") [Docket No. 23-2], at 1; Administrative Transcript ("Tr.") at 131. From September 1998 through April 2003, she worked as a "packager/picker" for a vitamin manufacturer, which required her to retrieve items from storage and ship them from a warehouse. Pl. Br. at 2; Tr. at 43, 49-50, 134. This job demanded that plaintiff stand and walk for up to seven (7) hours a day and that she lift and carry objects weighing up to fifty (50) pounds. Pl. Br. at 2; Tr. at 49-50. After being injured on the job in August 2002, plaintiff left work for three months. Pl. Br. at 2; Tr. at 43. Although she later returned to work, she claims she was unable to "continue working at the full-duty level." Pl. Br. at 2.

In October 2003, plaintiff began seeing Dr. Nolan Tzou, an anesthesiologist who specialized in pain management, for treatment of back pain. Pl. Br. at 4. On October 16, 2003, Dr. Tzou performed facet rhizotomy procedures on two areas of plaintiff's spine. Pl. Br. at 4; Tr. at 79-80.

In November 2003, plaintiff began working as a sales clerk at a Target store. Pl. Br. at 2; Tr. at 48, 133, 135. At an appointment with Dr. Tzou on January 8, 2004, plaintiff reported that her lower back pain had improved slightly, but that she still rated her neck and back pain as an eight (8) on a scale of one (1) to ten (10). Pl. Br. at 4; Tr. at 115. Dr. Zhou diagnosed plaintiff with, inter alia, cervicalgia, displacement of a cervical disc, and an intervertebral disc disorder. He prescribed Vicodin and Flexeril for plaintiff's pain. Pl. Br. at 4-5; Tr. at 115. During a visit on February 19, 2004, plaintiff again rated her pain as an eight (8) on a scale of one (1) to ten (10). Pl. Br. at 5; Tr. at 113-14. At that time, she stated that she was able to work. Tr. at 113.

Plaintiff stopped working at Target on June 23, 2004. Pl. Br. at 2; Tr. at 133. She testified that she was unable to perform the bending and lifting required in that job due to

2

"excruciating" pain in her back. Pl. Br. at 2; Tr. at 133-34. In a letter dated December 13, 2004, Dr. Tzou wrote: "From 6/23/04 until the present time, [plaintiff] has been unable to work due to her unjury [sic] on 8/12/02 and is currently totally disabled." Tr. at 104. According to Dr. Tzou's notes from January 24, 2005, plaintiff noted some improvement in her lower back pain, but that she was still experiencing "excruciating pain." Tr. at 103. Dr. Jay Wagner, a physician in West Islip, New York, examined Olenick on December 23, 2005. Pl. Br. at 13; Tr. at 81. Dr. Wagner observed, inter alia, that plaintiff's motor power was "normal" and that her "deep tendon reflexes [we]re bilaterally symmetrical." Tr. at 82. Dr. Wagner recommended that plaintiff undergo an MRI of her lumbar spine. Tr. 83.

Plaintiff stated in an application to the New York State Office of Temporary and Disability Assistance that she treated her pain with one (1) to two (2) Percocet 5/325 milligram tablets every six (6) hours, as well as thirty (30) milligrams of Avinza a day. Pl. Br. at 2; Tr. at 65. According to plaintiff, she had been taking seven and a half (7.5) milligrams of Vicodin, but stopped when she found that the medication no longer worked. Pl. Br. at 2; Tr. at 65. After an in-person interview, a Social Security claims representative noted that Olenick appeared to be in pain while sitting at the interview desk, and that she needed to stand in order to gain some relief. Pl. Br. at 2; Tr. at 41.

On May 12, 2006, Dr. Steven Calvino, a physician in Holbrook, New York, examined plaintiff at the request of the Social Security Administration ("SSA"). Pl. Br. at 14; Tr. at 84. Dr. Calvino diagnosed plaintiff with "mechanical low back pain" and "lumbar strain injury." He concluded that plaintiff was "mildly limited for any frequent bending or heavy lifting," but that she had "no restrictions for standing, walking, sitting, climbing, or fine motor activities . . . ."

Tr. 85-86. Dr. Calvino noted that her prognosis was "good." Dr. Robert Galler conducted a neurosurgical consultation in July 2006. Dr. Galler noted that plaintiff "had been doing well up until recently when the pain now is becoming more unmanageable," and found that she suffered from "degenerative disc disease and herniated disc at L4-5." Tr. at 94-95. In a report dated April 28, 2008, Dr. Mitchell Ehrlich, a physician in Farmingville, New York, noted that plaintiff had "full range of motion in the hips, knees, and ankles," full strength in the "hip, thigh, and calf musculature," and that her gait was "normal." Tr. at 126. Dr. Ehrlich diagnosed plaintiff with chronic low back pain. Tr. at 126.

At her hearing on June 10, 2008, plaintiff testified that she could sit only for a half-hour, and although she could walk, the pain of doing so brought her to tears, Pl. Br. at 3; Tr. at 136, that she was unable to drive or perform any household chores, Tr. at 137, and that she was told that surgery was the only option, but was "deathly afraid" of back surgery. Pl. Br. at 3; Tr. at 139. Plaintiff further testified that she did not seek office work because she did not know how to type. Pl. Br. at 4; Tr. at 135.

B.     Administrative Proceedings.

Plaintiff applied for disability insurance benefits on or about April 12, 2006, alleging a disability onset date of June 23, 2004. Tr. at 21, 42-43. By notice dated June 19, 2006, plaintiff's claim was denied. Tr. at 29-31. The SSA concluded that although plaintiff could not perform "certain kinds of work," she was capable of performing "sedentary work," which would include lifting a maximum of ten (10) pounds, as well as walking and standing occasionally. Tr. at 31.

4

Plaintiff filed a written request for a hearing. Tr. at 27-28. On June 10, 2008, she appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 128-142. In a decision dated July 3, 2008, the ALJ found that plaintiff retained the ability to perform the full range of sedentary work. In the decision, the ALJ noted that "[n]o doctor describes [plaintiff] as completely disabled, including Dr. Tzou." Tr. at 16.

Plaintiff requested review of the ALJ's decision by the SSA's Appeals Council. Tr. 6-8. In a letter dated September 17, 2008, the Appeals Council denied plaintiff's request for review. Tr. 3-5. This action followed.

II. Discussion

    A. Standard of Review

        1. Review of the Commissioner's Determination.

"The scope of review of a disability determination under 42 U.S.C. § 423(a)(1) . . . involves two levels of inquiry." Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987) (citing cases). First, the Court must determine whether the Commissioner applied the correct legal standards. Id. Second, the Court must determine whether the Commissioner's decision was supported by "substantial evidence." Id. (citing 42 U.S.C. § 405(g)); see also Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) ("[W]e conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied."). The district court "must affirm the Commissioner's decision if it is supported by substantial evidence even if

[it] might have ruled differently were it to have made the initial determination." Beckles v. Barnhart, 340 F.Supp.2d 285, 287 (E.D.N.Y. 2004) (citing Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)).

In this context, substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed.2d 842 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); Zabala v. Astrue, 595 F.3d 402, 408 (2d Cir. 2010). "In determining whether substantial evidence supports a finding of the [Commissioner], the court must not look at the supporting evidence in isolation, but must view it in light of the other evidence in the record that might detract from such finding, including, any contradictory evidence and evidence from which conflicting inferences may be drawn." Rivera v. Sullivan, 771 F. Supp. 1339, 1351 (S.D.N.Y.1991).

2. Plaintiff's Eligibility for Social Security Disability Benefits

Title II of the Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be determined to be under a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national

economy . . . ." Id. at § 423(d)(2)(A).

Regulations of the Social Security Administration establish a five-step sequential analysis for evaluating disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform . . . . [T]he claimant bears the burden of proof as to the first four steps, while the [Commissioner] must prove the final one.

DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (internal quotation marks omitted); see also 20 C.F.R. § 404.1520. The Commissioner's burden at step five (5) is usually determined "by resorting to the applicable medical vocational guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986)." Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986). Taking into account the claimant's residual functional capacity, age, education, and work experience, the grids indicate whether the claimant is able to engage in any substantial gainful work existing in the national economy. Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999).

B.  Analysis.

1.  Dr. Tzou's Opinion.

First, plaintiff argues that the ALJ "improperly concluded that Ms. Olenick's treating physician failed to offer an opinion that she was disabled," when Dr. Tzou actually opined that Olenick was "totally disabled" and that she could not sit for a prolonged period of time. Pl. Br. at 1. Although the ALJ considered Dr. Tzou's records and cited to them in his decision, he appears to have overlooked Dr. Tzou's December 13, 2004 opinion that plaintiff was "totally disabled." See Tr. at 104. This was a clear error that cannot be considered harmless.

"Where an ALJ declines to accord controlling weight to the medical opinion of a treating physician, he must give good reasons for refusing to do so." Taub v. Astrue, No. 10-CV-2526, 2011 WL 6951228, at *7 (E.D.N.Y. Dec. 30, 2011) (citing Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999)); see also 20 C.F.R. § 404.1527(d).[1] "Failure to provide such good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." Burgess v. Astrue, 537 F.3d 117, 129-30 (2d Cir. 2008) (quoting Snell, 177 F.3d at 133) (internal quotation marks omitted). "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," since a claimant "might be especially bewildered when told by an

---

[1] "A treating physician is a claimant's 'own physician, osteopath or psychologist (including an outpatient clinic and health maintenance organization) who has provided the individual with medical treatment or evaluation and who has or had an ongoing treatment and physician-patient relationship with the individual." Coscia v. Astrue, No. 08-cv-3042, 2010 WL 3924691, at *7 (E.D.N.Y. Sept. 29, 2010) (quoting Schisler v. Bowen, 851 F.2d 43, 46 (2d Cir. 1988)). The record indicates that Dr. Tzou treated Olenick on an ongoing basis between October 2003 and at least December 2007.

8

administrative bureaucracy that she is not [disabled], unless some reason for the agency's decision is supplied." Snell, 177 F.3d at 134.

The ALJ did not give "good reasons" for rejecting Dr. Tzou's opinion, assuming it was not entirely overlooked. Thus, remand is appropriate even if the administrative decision is otherwise supported by substantial evidence. See, e.g., Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004); McKay v. Barnhart, 302 F.Supp.2d 263, 265 (S.D.N.Y. 2004). The Court finds that remand is appropriate in order for the ALJ to consider Dr. Tzou's opinion, and if he chooses to reject it, to provide reasons for doing so.

2. Plaintiff's Remaining Arguments.

Plaintiff's remaining arguments are without merit. Plaintiff argues that the ALJ "failed to consider" the fact that she treated her pain with "narcotic pain medications," the use of which "indicates a very high level of pain caused by her low back injury." Pl. Br. at 21-22. There is no indication that the ALJ failed to consider plaintiff's use of pain medication; indeed, the ALJ specifically referenced her use of Percocet and a Lidoderm patch. Tr. at 14 (citing Exhibit 8F, Tr. 127). Although the decision erroneously referred to Avinza as "Avandia," there is nothing to suggest this was anything but a typographical error.[2]

Plaintiff also argues that the ALJ "made numerous factual omissions and improperly substituted his own opinion of the evidence against that of Dr. Tzou." Pl. Br. at 1. Specifically,

---

[2] According to the Physicians' Desk Reference, "AVANDIA is a thiazolidinedione antidiabetic agent indicated as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus." Physicians' Desk Reference 1284 (65th ed. 2011). In contrast, "AVINZA . . . contain[s] both immediate release and extended release beads of morphine sulfate for once daily oral administration." Id. at 1708.

9

plaintiff takes issue with the ALJ's statements that "Dr. Tzou consistently fails to find evidence of spasm" and that "[t]here was no cervical or paracervical pain or spasm and no trigger points" during Dr. Calvino's exam, arguing that there is evidence that she suffered from "intermittent" spasms. See Pl. Br. at 22. The ALJ's discussion of this issue, however, is not inaccurate. See Tr. at 85, 97-117, 123-24. Moreover, there is no evidence that the ALJ ignored the evidence of plaintiff's herniated disc, see Pl. Br. at 23, as he makes specific reference to it elsewhere in his decision, see Tr. at 14.

Plaintiff further argues that the ALJ "substituted his own opinion of the evidence against that of Dr. Tzou" by finding that the "absence of bowel/bladder dysfunction or muscle atrophy" supported a finding that plaintiff was not disabled. "In analyzing a treating physician's report, the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) (citing McBrayer v. Secretary of Health and Human Servs., 712 F.2d 795, 799 (2d Cir. 1983)). However, in the instance cited by plaintiff, the ALJ did not substitute his own judgment for that of Dr. Tzou, and it does not appear that this particular conclusion was inconsistent with any opinion offered by any of plaintiff's physicians.

III. Conclusion

For the reasons stated above, this case is remanded for further proceedings consistent with this order. On remand, the ALJ shall consider Dr. Tzou's opinion that plaintiff "is currently totally disabled" and shall issue an amended decision in light of that evidence. If the ALJ rejects Dr. Tzou's opinion, he shall provide "good reasons" for doing so. See Snell, 177 F.3d at 133.

The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

/S/ SANDRA J. FEUERSTEIN
Sandra J. Feuerstein
United States District Judge

Dated:	January 23, 2012
	Central Islip, New York